UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARLTON DEWAYNE FIELDS,

Plaintiff,

v.

DIRECTOR OF CDCR, et al.,

Defendants.

No.  2: 18-cv-0653 MCE KJN P

FINDINGS AND RECOMMENDATIONS

I.      Introduction

Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court are defendants' summary judgment motion and supplemental summary judgment motion.  (ECF Nos. 50, 62.)  For the reasons stated herein, the undersigned recommends that defendants' motions be granted.

II.     Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met.  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings,

1

> depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)).  "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact").  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists.  See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d

1564, 1575 (9th Cir. 1990).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on December 2, 2020 (ECF No. 47), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

////

////

////

3

III.    Plaintiff's Claims

        *Clarification of Plaintiff's Claims*

On September 5, 2019, the undersigned recommended that this action be dismissed.  (ECF No. 24.)  In particular, the undersigned recommended that claim II raised in the second amended complaint, challenging a policy of mixing general population and sensitive needs yard inmates, be dismissed for failure to exhaust administrative remedies.  (Id.)

The undersigned also recommended that claim I raised in the second amended complaint be dismissed for failure to state a potentially colorable claim.  (Id.)  In particular, the undersigned found that plaintiff had not pled sufficient facts in support of his claim that defendants violated the Eighth Amendment by denying his request for single-cell status despite his history of in-cell violence.  (Id.)  Additionally, the undersigned found that plaintiff had not pled sufficient facts in support of his claim that his mental health problems warranted single-cell status.  (Id.)

On October 15, 2019, the Honorable Morrison C. England adopted the September 5, 2019 findings and recommendations.  (ECF No. 26.)

On April 9, 2020, the Ninth Circuit Court of Appeals affirmed in part and reversed in part the court's judgment.  (ECF No. 33.)  The Ninth Circuit affirmed the dismissal of Count II for failure to exhaust administrative remedies.  The Ninth Circuit reversed the dismissal of claim I for failure to state a claim for the reasons stated herein:

> The district court dismissed Field's Eighth Amendment failure-to-protect claim in Count I for failure to state a claim.  However, Fields' alleged defendants had been notified via grievances of unsafe conditions, he had been attacked in his cell on numerous occasions, and defendants had refused his request for a single cell.  Liberally construed, these allegations were "sufficient to warrant ordering [defendants] to file an answer."  Wilhelm v. Rotman, 680 F.3d 1113, 1116 (9th Cir. 2012); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (explaining that "where the petitioner is pro se, particularly in civil rights cases, [courts should] construe the pleadings liberally and …afford the petitioner the benefit of any doubt" (citation and internal quotation marks omitted); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (elements of a failure-to-protect claim).  We reverse the judgment as to this claim and remand for further proceedings on this claim only.

(Id.)

On July 19, 2021, defendants filed a summary judgment motion addressing plaintiff's

4

claim that defendants violated the Eighth Amendment by denying his request for single-cell status despite his history of in-cell violence.  (ECF No. 50.)

On October 7, 2021, the undersigned issued an order observing that the Ninth Circuit's April 9, 2020 order did not specifically address the court's dismissal of plaintiff's claim alleging that defendants failed to consider his mental health when denying his request for single-cell status. (ECF No. 59.)  In an abundance of caution, the undersigned granted defendants thirty days to file a supplemental summary judgment motion addressing this claim.  (Id.)

On November 15, 2021, defendants filed a supplemental summary judgment motion addressing plaintiff's claim that defendants failed to consider his mental health when denying his request for single-cell status.  (ECF No. 62.)

*Allegations in Second Amended Complaint*

As discussed above, this action proceeds on claim I raised in the second amended complaint against the following defendants:  former California Department of Corrections and Rehabilitation ("CDCR") Secretary Kernan, Warden Sexton and Matta.[1]  (ECF No. 21.)

Plaintiff alleges that defendants Sexton and Matta wrongly denied his grievances requesting single-cell status while he was housed at California State Prison-Corcoran ("Corcoran").  (Id. at 3.)  Plaintiff alleges that he notified defendants in his grievances that he had been attacked in his cell "numerous times …cell fights and batteries."  (Id.)  Plaintiff alleges that defendants denied his request for single-cell status despite CDCR policy mandating that single-cell status be granted when mental health and in-cell violence show that double-celling is no longer safe.  (Id.)  Plaintiff alleges that he had two additional cell fights after defendants denied his grievance.  (Id.)

Plaintiff alleges that defendant Kernan supervises defendants Sexton and Matta.  (Id. at 2.) Plaintiff alleges that all defendants, including defendant Kernan, enacted a policy of placing cellmates together regardless of compatibility.  (Id. at 9.)

////

---

[1]   Defendant Sexton is deceased.

5

IV.     Summary Judgment Motion (ECF No. 50)

As discussed above, defendants' summary judgment motion addresses plaintiff's claim that defendants violated the Eighth Amendment by denying plaintiff's grievance requesting single-cell status despite plaintiff's history of in-cell violence.

A.   Undisputed Facts

Plaintiff disputes some of defendants' undisputed facts.  Accordingly, the undersigned herein sets forth only those facts that are undisputed by both parties.

*Undisputed Facts*

Undisputed Fact No. 1:  At all relevant times, plaintiff was a prisoner in custody of the CDCR.  (ECF No. 57 at 1.)

Undisputed Fact No. 2:  On September 21, 2016, plaintiff arrived at Corcoran after being transferred from Kern Valley State Prison ("Kern Valley").  Plaintiff was housed at Corcoran from September 21, 2016, to August 18, 2017.  Plaintiff did not receive a Rules Violation Report ("RVR") involving violence with a cellmate while he was housed at Corcoran.  (ECF No. 57 at 1-2; ECF No. 54 at 10.)

Undisputed Fact No. 3:  On January 25, 2017, plaintiff submitted appeal log. No. CSPC-3-17-0019, requesting that he be granted single-cell status at Corcoran.  (ECF No. 57 at 2; ECF No. 54 at 10.)

Undisputed Fact No. 4:  Plaintiff's appeal regarding single cell status was denied at the first, second and third levels of review because the ICC at Corcoran found that plaintiff did not meet the criteria for single-cell status.  Plaintiff's appeal was denied at the first level of review on February 27, 2017, then denied at the second level of review on April 12, 2017.  (ECF No. 57 at 2; ECF No. 54 at 10.)

Undisputed Fact No. 5:  Sometime after November 16, 2016, plaintiff was categorized as needing EOP level of care.  EOP stands for Enhanced Out Patient and is part of CDCR's Mental Health Delivery System.  An EOP designation does not automatically qualify an inmate for

////

////

1  single-cell status.[2]  (ECF No. 57 at 2; ECF No. 54 at 10.)

2  Undisputed Fact No. 6:  Inmate housing determinations, including single-cell status, are

3  determined by an ICC.  The ICC is a committee within the prison that reviews the inmate's case

4  factors within the prison setting to determine the best program and housing units available for that

5  inmate.  The ICC meets with the inmate and considers all available information concerning the

6  inmate, including prior disciplinary action, incidents of in-cell violence, classification scores and

7  security level.  The ICC also considers the inmate's view on his program, housing status, and any

8  other matters affecting the inmate within the prison system.  The ICC will then make a

9  determination as to what it believes is the best program and housing status best suited for the

10  inmate.[3]  (ECF No. 57 at 2; ECF No. 54 at 11.)

11  Undisputed Fact No. 7:  When an inmate is transferred to a new institution within CDCR,

12  prison staff at the new institution hold classification committees to determine housing placement

13  and programming based on the above procedures.[4]  (ECF No. 57 at 2; ECF No. 54 at 11.)

14  Undisputed Fact No. 8:  Plaintiff was seen by an ICC when he was transferred to

15  California State Prison, Sacramento.  (ECF No. 57 at 2; ECF No. 54 at 11.)

16  Undisputed Fact No. 9:  Before transferring to Corcoran, an ICC at Kern Valley was held

17  on September 1, 2016.  The ICC recognized that plaintiff had a pending Rules Violation Report

18  (RVR) dated August 28, 2016, for battery on an inmate.  The ICC also noted that plaintiff had no

19

20  [2]  In response to undisputed fact no. 5, plaintiff contends that inmate mental health is a factor that is now considered when making housing determinations.  (ECF No. 54 at 10-11.)  However,
21  plaintiff does not dispute that an EOP designation does not automatically qualify an inmate for single-cell status.

22  In undisputed fact no. 5, citing defendant Matta's declaration, defendants also state that plaintiff did not have any custody-related factors that would prelude him from double-cell
23  housing.  (ECF No. 57 at 2.)  The term "custody-related factors" is unclear and not defined in defendant Matta's declaration.

24
25  [3]  In his response to defendants' undisputed fact no. 6, plaintiff claims that the ICC did not consider the factors set forth above when considering whether plaintiff qualified for single-cell
26  status.  (ECF No. 54 at 11.)  However, plaintiff does not dispute the description of the ICC's duties set forth in undisputed fact no. 6.

27
28  [4]  In his response to defendants' undisputed fact no. 7, plaintiff "denies that the prison generally adheres to these rules…"  (ECF No. 54 at 11.)

other RVR for battery on an inmate within the previous 12 months, and that plaintiff had no significant history of in-cell predatory or assaultive behavior toward inmates.  Based on a review of plaintiff's case factors, the Kern Valley ICC elected to continue plaintiff on double-cell status with a compatible inmate, and recommended that plaintiff transfer to Corcoran.[5]  (ECF No. 57 at 3; ECF No. 54 at 12.)

Undisputed Fact No. 10:  After being transferred from Kern Valley, an ICC at Corcoran was held on October 4, 2016.  The ICC reviewed plaintiff's case factors and found that plaintiff did not have significant in-cell predatory or assaultive behavior toward inmates.  The ICC considered the following history of plaintiff's in-cell violence:  a pending RVR for the August 28, 2016, battery on a prisoner, a September 18, 2015, RVR for fighting, and a March 9, 2013, RVR for battery on an inmate—each of which occurred before plaintiff was housed at Corcoran.  Based on an evaluation of plaintiff's case factors, the ICC cleared plaintiff for double-cell housing.[6] (ECF No. 57 at 3.)

Undisputed Fact No. 11:  A second ICC was held at Corcoran on February 22, 2017.  The ICC noted that plaintiff was placed into an administrative segregation unit (ASU) on February 11, 2017, after receiving a RVR for battery on a peace officer.  The ICC further noted that plaintiff had not engaged in any in-cell altercations with inmates since the incident at Kern Valley on August 28, 2016.  Based on an evaluation of plaintiff's case factors, the ICC cleared plaintiff for double-cell housing.[7]  (ECF No. 57 at 3; ECF No. 54 at 12.)

Undisputed Fact No. 12:  A third ICC was held at Corcoran on May 9, 2017.  The ICC elected to continue plaintiff on double-cell housing with a compatible inmate, noting that plaintiff met departmental criteria to be double celled and had no significant history of in-cell predatory or

---

[5]  In his response to defendants' undisputed fact no. 9, plaintiff contends that the KVSP ICC wrongly found that he qualified for double cell status because "one battery is sufficient to warrant action according to the law."  (ECF No. 54 at 11.)

[6]  Plaintiff's response to defendants' statement of undisputed facts does not address defendants' undisputed fact no. 10.

[7]  In his response to defendants' undisputed fact no. 11, plaintiff points out that he had no cellmate while housed in the ASU.  (ECF No. 54 at 12.)

1  assaultive behavior toward inmates.[8]  (ECF No. 57 at 3; ECF No. 54 at 13.)

2      Undisputed Fact No. 13:  A fourth ICC was held at Corcoran on August 8, 2017.  The ICC

3  again elected to continue plaintiff on double-cell housing with a compatible inmate, noting that

4  plaintiff met the departmental criteria to be double celled and had no significant history of in-cell

5  predatory or assaultive behavior toward inmates.[9]  (ECF No. 57 at 3-4; ECF No. 54 at 13.)

6      Undisputed Fact No. 14:  Defendant Matta reviewed plaintiff's administrative grievance

7  concerning single cell status at the first level of review.  Defendant Matta was not a member of

8  the ICC that assisted in plaintiff's classification and housing determination.  (ECF No. 57 at 4;

9  ECF No. 54 at 13.)

10     Undisputed Fact No. 15:  Defendant Sexton's signature is on the second level response to

11 plaintiff's grievance.  (ECF No. 57 at 4; ECF No. 54 at 14.)

12     Undisputed Fact No. 16:  Defendant Kernan was not involved in the custody-level

13 decision to retain plaintiff on double-cell status, and he was not involved in plaintiff's inmate

14 appeal concerning single-cell status.[10]  (ECF No. 57 at 4.)

15     Undisputed Fact No. 17:  Plaintiff did not seek medical treatment related to in-cell

16 incidents that occurred after being transferred away from Corcoran.[11]  (ECF No. 57 at 4.)

17

18 [8]  In his response to defendants' undisputed fact no. 12, plaintiff disputes the finding by the May
   9, 2017 ICC that he had no significant history of in-cell predatory or assaultive behavior toward
19 inmates.  (ECF No. 54 at 13.)  Plaintiff cites his "documented battery on inmate and cell fights."
   (Id.)  The undersigned observes that undisputed fact no. 12 describes the findings of the May 9,
20 2017 ICC.

21 [9]  In his response to defendants' undisputed fact no. 13, plaintiff disputes the finding by the
22 August 8, 2017 ICC that he had no significant history of in-cell predatory or assaultive behavior
   toward inmates.  (ECF No. 54 at 13.)  Plaintiff cites "the documented cell violence."  (Id.)  The
23 undersigned observes that undisputed fact no. 13 describes the findings of the August 8, 2017
   ICC.
24

25 [10]  In his response, plaintiff disputes defendants' undisputed fact no. 16.  (ECF No. 54 at 14.)
   Plaintiff argues that defendant Kernan "set in place" a series of unconstitutional policies which
26 led to the alleged deprivations.  (Id.)  However, plaintiff does not dispute that defendant Kernan
27 was not involved in the custody level decision to retain plaintiff on double-cell status or plaintiff's
   appeal concerning single-cell status.

28 [11]  Plaintiff does not address defendants' undisputed fact no. 17.

9

1    B. <u>Relevant Documentary Evidence</u>

2    The undersigned herein sets forth the contents of plaintiff's relevant grievances,

3    defendants' responses to these grievances and the ICC chronos discussed in the grievances.

4    In the grievance submitted on January 25, 2017, plaintiff wrote, "I have documented cell

5    fights, battery, etc. I'm E.O.P. diagnosed with mental health issues that make me vulnerable…"

6    (ECF No. 50-4 at 8.) Plaintiff also wrote that his history of in-cell violence and the nature of his

7    commitment offense should be considered. (<u>Id.</u> at 10.) Plaintiff wrote that he had a "domestic

8    violence child enhancement" which put him in "violent situations with men who have wives,

9    children." (<u>Id.</u>) Plaintiff requested single-cell status. (<u>Id.</u> at 8.)

10   

11   On February 27, 2017, defendant Matta issued a first level response to plaintiff's

12   grievance. (<u>Id.</u> at 21-22.) Defendant Matta upheld the decision of the February 22, 2017 ICC

13   finding that plaintiff met the criteria for double cell status:

14   

15       The California State Prison-Corcoran (CSP-COR) Administrative
         Segregation Institution Classification Committee (ICC) reviewed
16       your case on February 22, 2017. Your cell status was reviewed and
         it was determined you meet the criteria for double cell status. As
17       noted in the Strategic Offender Management System (SOMS)
         Classification Committee Chrono dated February 22, 2017; you have
18       prior in-cell assaultive behavior toward cellmates. Additionally, it is
         noted you were cleared for double cell status per ICC action dated
19       September 1, 2016 and the February 22, 2017 ICC elected to
         continue your double cell status with a compatible inmate. Although
20       it is considered, your conviction for Penal Code 273.5(e)(1)-Corporal
         Injury Spouse Within 7 Years of Prior/Specified Conviction does not
21       preclude you from double cell housing.

22   (<u>Id.</u> at 22.)

23   In his second level grievance plaintiff wrote, "I am dissatisfied with the first level

24   response. I'm EOP and being celled with other EOP inmates causes clashing of symptoms. Also

25   no privacy is degrading." (<u>Id.</u> at 9.)

26   On April 12, 2017, defendant Sexton denied plaintiff's second level grievance. (<u>Id.</u> at 12-

27   13.) Defendant Sexton described the problem addressed in the grievance as follows:

28       You contend you have documented cell fights and a battery. You

     10

contend you are a participant in the Enhanced Outpatient Program (EOP) and have mental health issues which make you vulnerable. You contend the Department Operations Manual (DOM) Chapter 5, Article 46, addressed the proper housing of inmates to ensure the safety and security of the institution.  You contend that California Code of Regulations (CCR), Title 15, section 3377.1(c), states the history of in cell violence should be considered.  You further contend you have a domestic violence child endangerment offense which puts you in violent situations with men who have wives and children.

(Id. at 12.)

Defendant Sexton denied plaintiff's request for single-cell status and upheld the decision of the February 22, 2017, finding plaintiff eligible for double-cell status:

California State Prison (CSP), Corcoran's (COR) Institutional Classification Committee (ICC) reviewed your case on February 22, 2017 for an Initial Administrative Segregation Unit (ASU) review. ICC elected to continue you on double cell status per Classification Committee Chrono dated February 22, 2017, which states in part, "*ICC dated 9/1/16 elected to continue S on double cell.  S has remained double cell without further documented in-cell incidents. Therefore this ICC elects to continue S on D/C with compatible inmate with safety concerns.  S meets departmental D/C policy, noting S has no significant history of in-cell predatory/assaultive behavior towards cellmates.*"  Your in-cell history was also reviewed:  "*S has the following history of in-cell assaultive behavior towards cellmates:  RVR dated 3/9/13 for Battery on an Inmate; RVR dated 9/18/15 for Fighting and RVR dates 8/28/16 for Battery on a Prisoner.*"  You do not have any custody related factors which would preclude you from double cell housing.  The department expectation is that all inmates double cell pursuant to CCR, Title 15, Section 3269, which states, in part, "*Inmates shall accept Inmate Housing Assignments (IHAs) as directed by staff.  It is the expectation that all inmates double cell…If staff determines an inmate is suitable for double celling, based on the criteria as set forth in this section, the inmate shall accept the housing assignment or be subject to disciplinary action for refusing…*"  The department also considers the mental health staff recommendations regarding cell status, pursuant to CCR, Title 15, Section 3269(f), which states, in part, "*In cases where single cell status is recommended by clinical staff due to mental health or medical concerns, a classification committee shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed…*"  Therefore, your placement on single cell status is not warranted.

Pursuant to CCR, Title 15, 3377.1(c) and DOM section 54046.1, a

11

> classification committee has reviewed your custody and elected not
> to affix an "S" suffix based on documented evidence you may be
> safety housed in a double cell situation.

(Id. at 12-13 (emphasis in original).)

The September 1, 2016, ICC decision finding plaintiff suitable for double-cell status found,

> CELL REVIEW:  S has one act of in-cell violence noting pending
> RVR dated 8/28/16 for Battery on an Inmate.  Committee elects to
> place S on D/C with a compatible cellmate with safety concerns.  S
> meets departmental D/C policy, noting S has no significant history
> of in-cell predatory/assaultive behavior towards cellmates.

(Id. at 39.)

The September 1, 2016 decision states that plaintiff has no other RVR for battery on an inmate within the last twelve months.  (Id.)  The September 1, 2016, ICC decision noted plaintiff's conviction for corporal injury on a spouse.  (Id.)

The September 1, 2016, ICC decision also includes a section titled "Clinician Review." (Id.)  This section states,

> S is a participant in the MHSCS.  S's Activities of Daily Living
> (ADL) are adequate.   S's interactions with staff appear to be
> appropriate.  S's placement in alternative levels of care in the Mental
> Health   Services   Delivery   System   was   considered   and   is   not
> recommended.   Per S's assigned clinician, S's mental health is
> unlikely to decompensate while retained in ASU.   Present as a
> member of the ICC was Dr. Ward.

(Id.)

The September 1, 2016, ICC decision also includes a section addressing medical and mental health status:

> MEDICAL/MENTAL HEALTH STATUS:  S's medical status has
> been reviewed and S has no housing restrictions.  S is Full Duty/High
> Risk per CDC 128C-3 dated 5/25/16.   Per CDC 128C-2  dated
> 2/20/13, S is designated as NCF.

(Id.)

The October 4, 2016, ICC decision finding plaintiff suitable for double-cell status states,

> CELL STATUS REVIEW:  Committee has reviewed "S" housing
> status   and   determined   "S"   does   not   have   significant   in-
> cell/predatory/assaultive   behavior   towards   inmates.   "S"   has   the

12

1
2

> following history of in-cell violence: 8/28/16 "Battery on a Prisoner"
> (pending), 9/8/2015 "Fighting", 3/9/2013 "Battery on an Inmate."
> Committee elects to continue double cell status.

3    (Id. at 44.)

4        The October 4, 2016, ICC decision also noted plaintiff's conviction for corporal injury on

5    a spouse. (Id.) The October 4, 2016, ICC decision also has a section titled "Clinician Review."

6    (Id.) This section states, "'S' is a participant in the MHSDS at the EOP level of care per CDCR

7    128MH dated 9/13/2016. D. Minter PHD, present during hearing." (Id.)

8        The February 22, 2017, ICC decision states finding petitioner suitable for double-cell

9    status states,

10

> CELL REVIEW:  S has the following history of in-cell assaultive
> behavior towards cellmates:  RVR dated 3/9/13 for Battery on an
> Inmate, RVR dated 9/18/15 for Fighting and RVR dated 8/28/16 for
> Battery on a Prisoner.  ICC dated 9/1/16 elected to continue S on
> double cell.  S has remained double cell without further documented
> in-cell incidents.  Therefore this ICC elects to continue S on D/C with
> compatible inmate with safety concerns.  S meets departmental D/C
> policy, noting S has no significant history of in-cell
> predatory/assaultive behavior towards cellmates.

11
12
13
14

15    (Id. at 48.)

16        The February 22, 2017, ICC decision also states that plaintiff was initially placed in

17    administrative segregation on February 11, 2017, for battery on a peace officer. (Id.) The

18    February 22, 2017, ICC decision also has a section titled "Clinician Comments." (Id.) This

19    section states,

20

> S is a participant in the MDSDS at the EOP level of care.  Based on
> an interview with S and review of the C-File; S's Activities of Daily
> Living (ADL) are adequate.  S's interactions with staff appear to be
> appropriate.  S's placement in alternative levels of care in the Mental
> Health Delivery System was considered and is not recommended.
> Per' S's assigned clinician, S's mental health is unlikely to
> decompensate while retained in ASU.  Present as a member of ICC
> was Dr. Gonzales.

21
22
23
24

25    (Id.)

26        The undersigned observes that defendants presented evidence that after plaintiff's transfer

27    to Corcoran on September 21, 2016, plaintiff was held in the ASU from February 11, 2017, until

28    his transfer away from Corcoran on August 18, 2017. (Id. at 34.) In his opposition, plaintiff

13

1    contends that he was in a single-cell while housed in the Corcoran ASU.  (ECF No. 54 at 12.)

2          C.  Are Defendants Linked to the Alleged Deprivations?

3          Defendants move for summary judgment on the grounds that they are not adequately

4    linked to the alleged deprivations.

5          *Defendants Matta and Sexton*

6          It is undisputed that defendant Matta and Sexton's involvement was limited to their

7    review of plaintiff's administrative appeals at the first and second levels, respectively.

8    Defendants move for summary judgment as to these defendants on the grounds that they were not

9    positioned to make a determination on or grant plaintiff's request for single-cell status because

10   they did not participate in any ICC regarding plaintiff's housing status.

11         An official whose only involvement in an inmate's constitutional claim was as a

12   participant in the administrative grievance process generally is not subject to liability under

13   § 1983.  For example, an appeals coordinator cannot cause or contribute to a completed

14   constitutional violation that occurred in the past and that is not remediable by any action the

15   reviewer might take.  See, e.g., George v. Smith, 507 F.3d 605, 609–10 (7th Cir. 2007) ("A guard

16   who stands and watches while another guard beats a prisoner violates the Constitution; a guard

17   who rejects an administrative complaint about a completed act of misconduct does not.").

18         If, however, the defendant (1) knew of an ongoing constitutional violation, (2) "had the

19   authority and opportunity to prevent" that violation, yet (3) failed to act to remedy the violation,

20   then the defendant may be liable under § 1983.  See Herrera v. Hall, 2010 WL 2791586, at *4

21   (E.D. Cal. July 14, 2010) (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

22         In the summary judgment motion, defendants argue that they "were never in a position to

23   make a determination on or grant plaintiff's request for single-cell status because they did not

24   participate in any ICC hearing."  (ECF No. 50-1 at 11.)  While defendants may not have been on

25   the ICC's considering plaintiff's housing status, they reviewed plaintiff's grievances challenging

26   the ICC decision finding plaintiff eligible for double-cell status.  Defendants' ability to review the

27   ICC decisions indicates that they had some authority to address plaintiff's claim that the ICC

28   incorrectly found him ineligible for single-cell status.  Accordingly, defendants' motion for

1    summary judgment on the grounds that defendants Matta and Sexton had no personal

2    participation in the incidents complained of should be denied.

3        Plaintiff also claims that defendants Matta and Sexton enacted or authorized a policy

4    permitting prison officials to double-cell inmates with histories of cell violence.  However,

5    plaintiff provides no evidence in support of this conclusory allegation.  Plaintiff's own experience

6    of allegedly being housed with incompatible cellmates is not evidence of the CDCR-wide policy

7    alleged.  Accordingly, defendants Matta and Sexton should be granted summary judgment to this

8    claim.

9        *Defendant Kernan*

10       Defendants argue that plaintiff failed to link defendant Kernan to the alleged deprivations.

11       Under § 1983, liability may not be imposed on supervisory personnel for the actions or

12   omissions of their subordinates under the theory of respondeat superior.  Ashcroft v. Iqbal, 556

13   U.S. 662, 677 (2009).  "A supervisor may be liable only if (1) he or she is personally involved in

14   the constitutional deprivation, or (2) there is 'a sufficient causal connection between the

15   supervisor's wrongful conduct and the constitutional violation."  Crowley v. Bannister, 734 F.3d

16   967, 977 (9th Cir. 2013) (citations omitted).  "Under the latter theory, supervisory liability exists

17   even without overt personal participation in the offensive act if supervisory officials implemented

18   a policy so deficient that the policy itself is a repudiation of constitutional rights and is the

19   moving force of a constitutional violation."  Crowley, 734 F.3d at 977 (citing Hansen v. Black,

20   885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

21       In the second amended complaint, plaintiff identifies defendant Kernan as the Secretary of

22   CDCR.  (ECF No. 21 at 2.)  Plaintiff alleges that his grievances notified supervisors acting on

23   defendant Kernan's behalf that plaintiff had been attacked in his cell several times.  (Id. at 3.)

24   Plaintiff alleges that defendant Kernan supervises defendants Matta and Sexton.  (Id. at 6.)

25   Plaintiff also alleges that defendant Kernan is liable because he created a policy or custom

26   permitting inmates to be celled together despite incompatibility.  (Id. at 9.)

27       In the summary judgment motion, defendants argue that plaintiff presents no facts

28   showing that defendant Kernan personally participated in the alleged deprivations.  In the

1   opposition, plaintiff argues that defendant Kernan was notified by way of plaintiff's appeal that

2   plaintiff was in an unsafe condition.  Plaintiff also argues that defendant Kernan implemented a

3   policy that permitted double-celling of inmates with a history of cell violence.  Plaintiff argues

4   that as the CDCR Secretary, defendant Kernan had to know that CDCR was not addressing cell

5   violence.

6          To the extent plaintiff bases defendant Kernan's liability on a theory of respondeat

7   superior, defendant Kernan is entitled to summary judgment.  The undersigned also rejects

8   plaintiff's argument that defendant Kernan knew of the unsafe conditions plaintiff faced through

9   plaintiff's grievances.  Defendant Kernan did not sign plaintiff's first or second level grievance,

10  as discussed above.  The third level grievance is also not signed by defendant Kernan.  (ECF No.

11  50-4 at 32.)  There is no evidence that defendant Kernan had knowledge of plaintiff's grievances.

12         While plaintiff claims that defendant Kernan enacted or authorized a policy permitting

13  prison officials to double-cell inmates with histories of cell violence, plaintiff provides no

14  evidence in support of this conclusory allegation.  Plaintiff's own experience of allegedly being

15  housed with incompatible cellmates is not evidence of the CDCR-wide policy alleged.

16         Accordingly, for the reasons discussed above, the undersigned recommends that defendant

17  Kernan be granted summary judgment on the grounds that plaintiff has not presented sufficient

18  evidence linking him to the alleged deprivations.

19         D.  Did Defendants Act with Deliberate Indifference to a Serious Risk to Plaintiff's

20  Safety?

21         At the outset, the undersigned clarifies plaintiff's Eighth Amendment claim.  As discussed

22  above, plaintiff alleges that defendants violated the Eighth Amendment by denying his grievances

23  requesting single-cell status despite plaintiff's history of in-cell violence.  In the second amended

24  complaint, plaintiff alleges that he notified defendants in his grievances that he had been

25  "attacked in his cell numerous times, cell fights and batteries."  (ECF No. 21 at 3.)

26         *Legal Standard for Eighth Amendment Failure-to-Protect Claim*

27         "[P]rison officials have a duty … to protect prisoners from violence at the hands of other

28  prisoners."  Farmer, 511 U.S. at 833.  To establish a failure to protect claim, the prisoner must

16

1   establish that prison officials were deliberately indifferent to a sufficiently serious threat to the

2   prisoner's safety.  Id. at 837.  "'Deliberate indifference' has both subjective and objective

3   components."  Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013).  The prisoner

4   must show that "the official [knew] of and disregard[ed] an excessive risk to inmate...safety; the

5   official must both be aware of facts from which the inference could be drawn that a substantial

6   risk of serious harm exists, and [the official] must also draw the inference."  Farmer, 511 U.S. at

7   837.  "Liability may follow only if a prison official 'knows that inmates face a substantial risk of

8   serious harm and disregards that risk by failing to take reasonable measures to abate it.'"

9   Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

10          *Discussion—Did Defendants Act with Deliberate Indifference?*

11          Defendants argue that they did not act with deliberate indifference when denying

12   plaintiff's grievances because it is undisputed that they were not subjectively aware of any known

13   risk of harm to plaintiff at the time they denied his grievances.  Defendants also argue that they

14   could not have been aware of the in-cell incidents that occurred at CSP-Sac after plaintiff was

15   transferred away from Corcoran.

16          To put defendants' denial of plaintiff's grievances in context, the undersigned herein sets

17   forth the relevant regulation addressing the standards for granting single-cell status to inmates

18   who have been victimized in-cell by another inmate and for inmates who are the instigators of in-

19   cell abuse, i.e., California Code of Regulations Title 15, § 3269(d).  The ICC decisions referred to

20   this regulation when they found that plaintiff did not have a significant history of in-cell violence,

21   although they did not specifically cite this regulation:

22          (d) Single cell status shall be considered for those inmates who
             demonstrate a history of in-cell abuse, significant in-cell violence
23          towards a cell partner, verification of predatory behavior towards a
             cell partner, or who have been victimized in-cell by another inmate.
24          Staff shall consider the inmate's pattern of behavior, not just an
             isolated incident. An act of mutual combat in itself does not warrant
25          single cell status. The following factors must be considered when
             evaluating single cell status, noting these factors are not exclusive of
26          other considerations:

27          (1) Predatory behavior is characterized by aggressive, repeated
             attempts to physically or sexually abuse another inmate.
28

(2) Documented and verified instances of being a victim of in-cell physical or sexual abuse by another inmate.

Cal. Code Regs. Tit. 15, § 3269(d).

The undersigned herein considers whether the information defendants reviewed when they denied plaintiff's grievances demonstrated that plaintiff faced a substantial risk of harm from other inmates if not granted single-cell status.

The undersigned first observes that in denying plaintiff's grievances defendants could not have considered the two fights plaintiff referred to in his second amended complaint because they occurred after plaintiff transferred away from Corcoran. These fights occurred on May 18, 2018, and July 18, 2018. (ECF No. 21 at 15, 17.) On these dates, plaintiff was housed at California State Prison-Sacramento. (ECF No. 50-4 at 34.)

The responses to plaintiff's grievances demonstrate that defendants reviewed plaintiff's grievance and the February 22, 2017, ICC decision when denying his grievances. (ECF No. 50-5 at 11-12, 21-22). In his response to plaintiff's grievance, defendant Matta also states that he considered information from his interview with plaintiff. (ECF No. 50-5 at 21-22.) In his declaration, defendant Matta states that during the interview, he asked plaintiff to further explain the issue and to provide any additional supporting evidence, documents or witnesses. (ECF No. 50-4 at 5-6.) Defendant Matta states that plaintiff provided no additional information. (Id.) In his unverified opposition, plaintiff denies that defendant Matta interviewed him. (ECF No. 54 at 13.)

Accordingly, the undersigned herein considers whether plaintiff's grievances and/or the February 22, 2017, ICC decision contained information demonstrating that plaintiff faced a substantial risk of harm from other inmates if he did not receive single-cell status. Because plaintiff failed to adequately oppose defendants' evidence regarding his interview with defendant Matta, the undersigned also considers defendants' evidence that plaintiff provided no additional information during the interview.

Plaintiff's grievances did not refer to any risk or threats from specific inmates. In his

18

grievance, as discussed above, plaintiff wrote, "I have documented cell fights, battery, etc.  I'm EOP diagnosed with mental health issues that make me vulnerable…"  (ECF No. 50-4 at 8.)  In his grievance, plaintiff did not inform defendants that he had been attacked in his cell numerous times following his transfer to Corcoran.  Instead, it appears that plaintiff referred to the three incidents of in-cell violence discussed in the ICC reports.  In addition, during the interview with defendant Matta, plaintiff did not claim that he had incidents of in-cell violence following his transfer to Corcoran.  For these reasons, the undersigned finds that plaintiff's grievance did not demonstrate that plaintiff faced a serious risk of harm from other inmates if he did not receive single-cell status.

As discussed above, the February 22, 2017, ICC decision noted plaintiff's history of three incidents of in-cell violence:  March 9, 2013 RVR for battery on an inmate, September 18, 2015 RVR for fighting, and the August 28, 2016 RVR for battery on a prisoner.  (ECF No. 50-4 at 48.)  The February 22, 2017, ICC found plaintiff eligible for double-cell status because he had no "significant history of in-cell predatory/assaultive behavior toward other inmates."  (Id.)   The February 22, 2017, ICC also found that plaintiff had remained double celled without further documented in-cell incidents.  (Id.)

While the February 22, 2017, ICC decision acknowledged plaintiff's three prior incidents of in-cell violence, it did not find that they involved "significant in-cell violence toward a cell partner," which could have qualified plaintiff for single-cell status.  Cal. Code Regs. tit. 15, § 3269(d).  Plaintiff does not contend that these prior incidents involved "significant in-cell violence" and nor has he presented evidence supporting such a claim.  Most importantly, the record contains no evidence suggesting that the ICC should have found that these prior incidents involved "significant in-cell violence toward a cell partner" *and* that defendants knew of this error.

The February 22, 2017, ICC also did not find that plaintiff was the victim of any of the prior incidents of in-cell violence, which also may have qualified plaintiff for single-cell status.  Cal. Code Regs. tit. 15, § 3269(d).  The February 22, 2017, ICC also did not find that plaintiff engaged in predatory behavior during the prior incidents of in-cell violence, which also may have

1  qualified plaintiff for single-cell status.  Cal. Code Regs. tit. 15, § 3269(d).  Plaintiff presented no

2  evidence demonstrating that the ICC should have found that he was the victim or that he engaged

3  in predatory behavior during the prior incidents *and* that defendants knew of this error.

4      The February 22, 2017, ICC decision found that plaintiff did not have a "significant

5  history" of in-cell predatory/assaultive behavior toward cellmates warranting single-cell status.

6  This finding was apparently based on the fact that plaintiff's three prior incidents of in-cell

7  violence occurred over a 3 ½ year period of time.  In addition, these three prior incidents

8  apparently did not involve "significant in-cell violence toward a cell partner" or "predatory"

9  behavior.  Plaintiff also had no incidents of in-cell violence following his transfer to Corcoran in

10  September 2016.  The undersigned finds that, based on these circumstances reflected in the

11  February 22, 2017, ICC decision, plaintiff's three prior incidents of in-cell violence did not

12  demonstrate that plaintiff faced a substantial risk of harm from other inmates were he not granted

13  single-cell status.  This finding is supported by the February 22, 2017, ICCs finding that plaintiff

14  would continue to be housed with a compatible inmate.  (ECF No. 50-4 at 48.)

15      For the reasons discussed above, the undersigned finds that defendants did not act with

16  deliberate indifference when they denied plaintiff's grievances requesting single-cell status.  The

17  information defendants reviewed when evaluating plaintiff's grievances, i.e., plaintiff's

18  grievances, the interview with defendant Matta and the February 22, 2017, ICC decision,

19  contained no information demonstrating that plaintiff faced a substantial risk of harm from other

20  inmates were he not granted single-cell status.  Accordingly, defendants should be granted

21  summary judgment on these grounds.  See Villery v. California Department of Corrections, 2020

22  WL 7651976, at *3 (E.D. Cal. Feb. 25, 2020) ("[H]ousing determinations for prisoners in the

23  CDCR are complex decisions peculiarly within the province of expert prison officials involving a

24  multitude of factors).[12]

25  _____

   [12]  Although not specifically raised by plaintiff in the second amended complaint, plaintiff argued
26  in his grievance that his conviction for "domestic violence child enhancement" justified single-
   cell status because it put him in violent situations with men who have wives and children.
27  Defendants considered plaintiff's conviction when denying plaintiff's grievance.  Defendant
   Sexton found that, "Although it is considered, your conviction for Penal Code 273.5(e)(1)-
28  Corporal Injury Spouse Within 7 Years of Prior/Specified Conviction does not preclude you from

1    In an abundance of caution, the undersigned also finds that to the extent defendants

2    reviewed the ICC decisions from September 1, 2016, and October 4, 2016, these decisions

3    contained no information demonstrating that plaintiff faced a substantial risk of harm from other

4    inmates if he did not receive single-cell status.  The information in the September 1, 2016, and

5    October 4, 2016, ICC decisions is very similar to the information in the February 22, 2017, ICC

6    decision.

7    E. Discussion—Did Plaintiff Face a Substantial Risk of Serious Harm?

8    Defendants move for summary judgment on the objective prong of plaintiff's Eighth

9    Amendment claim.  Defendants contend that throughout the entirety of plaintiff's time at

10   Corcoran, plaintiff did not experience any incidents of violence with other inmates.  Defendants

11   also observe that plaintiff's grievances did not refer to any risk or threats from specific inmates.

12   Defendants also argue that each time plaintiff's case factors were reviewed to determine his

13   housing status, the ICC found that plaintiff had no significant history of in-cell predatory or

14   assaultive behavior toward inmates.  Defendants also argue that the two cell fights plaintiff refers

15   to in his second amended complaint occurred at a different institution after plaintiff transferred

16   away from Corcoran.

17   Because the undersigned finds that defendants should be granted summary judgment on

18   the subjective prong of plaintiff's Eighth Amendment claim, the undersigned need not consider

19   whether defendants are entitled to summary judgment as to the objective prong of plaintiff's

20   Eighth Amendment claim.

21   F. Did Plaintiff Suffer a Compensable Injury?

22   Defendants move for summary judgment on the grounds that plaintiff suffered no

23   compensable injury.  (ECF No. 50-1 at 16.)  Because defendants are entitled to summary

24   judgment based on the merits of plaintiff's Eighth Amendment claim, the undesigned need not

25   reach this issue.[13]

26   _____

27   double cell housing."  Defendants did not fail to consider plaintiff's conviction when denying his
     request for single-cell status and the record contain no evidence that plaintiff's incidents of in-cell
     violence were related to his conviction.

28   [13] The undersigned observes that plaintiff was placed in the Corcoran ASU on February 11, 2017,

1    G.  Qualified Immunity

2         Defendants argue that they are entitled to qualified immunity.

3         A qualified immunity analysis requires determining: (1) whether facts alleged, taken in the

4    light most favorable to the injured party, show the defendants' conduct violated a constitutional

5    right; and (2) whether the right was clearly established.  Lacey v. Maricopa Cnty., 693 F.3d 896,

6    915 (9th Cir. 2012) (en banc) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part

7    on other grounds by Pearson v. Callahan, 555 U.S. 223, 236 (2009)).  With respect to the second

8    prong, a court considers whether the contours of the right were sufficiently clear at the time the

9    action occurred such that a "reasonable official would understand that what he is doing violates

10   that right."  Mendoza v. Block, 27 F.3d 1357, 1361 (9th Cir. 1994).  In the absence of "a case

11   directly on point," the court may compare relevant "specific factors" to determine whether a

12   reasonable officer would have known that the conduct in question was unlawful.  Isayeva v.

13   Sacramento Sheriff's Dep't, 872 F.3d 938, 947 (9th Cir. 2017).

14        Because the undersigned finds that defendants are entitled to summary judgment based on

15   the merits of plaintiff's Eighth Amendment claim, the undersigned need not address the issue of

16   qualified immunity any further.

17       H.  Plaintiff's Request for Further Discovery

18        In his opposition, plaintiff contends that additional discovery is necessary to oppose

19   summary judgment.  (ECF No. 54 at 3.)

20        Federal Rule of Civil Procedure 56(d) "provides a device for litigants to avoid summary

21   judgment when they have not had sufficient time to develop affirmative evidence."  United States

22   v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002).  Under Rule 56(d), if the

23

24   after being charged with Battery on a Peace Officer.  (ECF No. 50-4 at 8.)  Plaintiff was single-
     celled while housed in the Corcoran ASU from February 11, 2017, until his transfer away from
25   Corcoran on August 18, 2017.  (See ECF Nos. 50-4 at 34; 54 at 12.)  The February 22, 2017, ICC
     report states that on February 22, 2017, the ICC approved a 180-day ASU extension to complete
26   the disciplinary process for battery on a peace officer.  (ECF No. 50-4 at 49.)  Based on this
     extension, plaintiff remained single-celled in the ASU until his transfer away from Corcoran.
27   Therefore, defendants' denial of plaintiff's request for single-cell status appears to have had no
28   practical effect on his housing status at Corcoran.

22

1  nonmoving party "shows by affidavit or declaration that, for specified reasons, it cannot present

2  facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it;

3  (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other

4  appropriate order." Fed. R. Civ. P. 56(d).

5      In order to prevail under Rule 56(d), the party opposing summary judgment must make

6  "'(a) a timely application which (b) specifically identifies (c) relevant information, (d) where

7  there is some basis for believing that the information sought actually exists.'" Emp'rs Teamsters

8  Local Nos. 175 & 505 Pension Trust Fund v. Clorox, 353 F.3d 1125, 1129 (9th Cir. 2004)

9  (quoting VISA Int'l Serv. Ass'n v. Bankcard Holders of Am., 784 F.2d 1472, 1475 (9th Cir.

10  1986)).

11      In the opposition, plaintiff does not identify the discovery he allegedly needs in order to

12  oppose defendants' summary judgment motion.  The undersigned also observes that plaintiff had

13  an opportunity to conduct discovery in this case.  (ECF No. 47 (discovery and scheduling order).)

14  Accordingly, plaintiff's motion to defer defendants' summary judgment motion pursuant to Rule

15  56(d) should be denied.

16      V.      Supplemental Summary Judgment Motion (ECF No. 62)

17      As discussed above, defendants' supplemental summary judgment motion addresses

18  plaintiff's claim that defendants violated the Eighth Amendment by failing to consider his mental

19  health needs when denying his request for single-cell status made in plaintiff's grievances.

20      A. Legal Standard

21      A prisoner's claim of inadequate medical care does not constitute cruel and unusual

22  punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

23  "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

24  2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate

25  indifference requires plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

26  to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

27  wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

28  indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. at 837. "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

B. Undisputed Facts

Undisputed Fact No. 1:  Inmate who require mental health services are placed into different levels of care, depending on the urgency of those needs.  (ECF No. 62-1 at 1; ECF No. 65 at 6.)

Undisputed Fact No. 2:  Inmates placed into the Enhanced Outpatient Program (EOP), for example, require a higher level of care than those inmates in the Correctional Clinical Case Management System (CCCMS).  (ECF No. 62-1 at 1; ECF No. 65 at 6.)

Undisputed Fact No. 3:  An EOP placement or status does not qualify an inmate for single-cell status.[14]  (ECF No. 62-1 at 1.)

Undisputed Fact No. 4: Only an ICC may determine an inmate's housing status, including whether an inmate qualifies for a single cell.  And a recommendation from mental health staff will rarely result in an inmate being placed on single-cell status.[15] (ECF No. 62-1 at 2.)

Undisputed Fact No. 5:  During the time plaintiff was housed at Corcoran, plaintiff

[14]  Plaintiff objects that undisputed fact no. 3 is vague.  (ECF No. 65 at 6.)  This objection is without merit and overruled.

[15]  Plaintiff objects that undisputed fact no. 4 is vague.  (ECF No. 65 at 6.)  This objection is without merit and overruled.

24

was a participant in the EOP level of care.  (ECF No. 62-1 at 2; ECF No. 65 at 7.)

Undisputed Fact No. 6:  The ICC is a committee within the prison that reviews an inmate's case factors within the prison setting to determine the best program and housing assignments for that inmate.  Among several case factors, an inmate's mental health history is always reviewed and considered by the ICC.[16]  (ECF No. 62-1 at 2.)

Undisputed Fact No. 7:  A mental health clinician must be present at every ICC at Corcoran.  (ECF No. 62-1 at 2; ECF No. 65 at 7.)

Undisputed Fact No. 8:  In cases where single-cell status is recommended by clinical staff due to mental health or medical concerns, an ICC, i.e., custody staff, shall make the final determination of an inmate's housing or cell placement.[17]  (ECF No.62-1 at 2.)

Undisputed Fact No. 9:  The ICC shall consider the clinician recommendations, with assistance from the clinician who participates in the committee and reviews the inmate's case factors when determining the housing status.  Single-cell status based upon clinician recommendation is usually a temporary, short-term measure and must be periodically reviewed.[18]  (ECF No. 62-1 at 2.)

Undisputed Fact No. 10:  Based on a review of plaintiff's mental health records, clinical staff did not recommend single-cell status for plaintiff due to mental health or

---

[16]  Plaintiff objects that undisputed fact no. 6 is vague.  (ECF No. 65 at 7.)  This objection is without merit and overruled.

[17]  Plaintiff objects that undisputed fact no. 8 is vague.  (ECF No. 65 at 7.)  This objection is without merit and overruled.

[18]  Plaintiff objects that undisputed fact no. 9 is vague.  (ECF No. 65 at 7.)  This objection is without merit and overruled.

medical concerns during the time plaintiff was housed at Corcoran.[19]  (ECF No. 62-1 at 2.)

Undisputed Fact No. 11: Plaintiff arrived at Corcoran after transferring from Kern Valley State Prison (Kern Valley) on September 21, 2016.  Plaintiff was housed at Corcoran until August 18, 2017.  (ECF No. 62-1 at 2; ECF No. 65 at 7.)

Undisputed Fact No. 12:  After plaintiff was transferred from Kern Valley, an ICC at Corcoran was held on October 4, 2016.  Among other factors considered by the ICC, plaintiff's mental health was reviewed and a clinician, Dr. D. Minter, was present during the ICC.[20]  (ECF No. 62-1 at 2.)

Undisputed Fact No. 13: A second ICC was held at Corcoran on February 22, 2017.  Among other factors considered by the ICC, plaintiff's mental health was reviewed and records indicate that a clinician, Dr. Gonzales, was present during the ICC.  Dr. Gonzales noted that, based on an interview with plaintiff and a review of his central file, plaintiff's activities of daily living (ADL) were adequate, his interactions with staff appeared to be appropriate, and plaintiff's placement in alternative levels of mental health care was not recommended.[21]  (ECF No. 62-1 at 3.)

Undisputed Fact No. 14: A third ICC was held at Corcoran on May 9, 2017.  Among

---

[19]  Plaintiff objects that undisputed fact no. 10 is vague.  (ECF No. 65 at 7.)  This objection is without merit and overruled.

[20]  Plaintiff objects that undisputed fact no. 12 is vague.  (ECF No. 65 at 7.)  This objection is without merit and overruled.

[21] Plaintiff denies undisputed fact no. 13 on the grounds that defendants did not produce his mental health records.  (ECF No. 65 at 7-8.)  The undersigned construes this argument as a request to defer defendants' summary judgment motion pursuant to Rule 56(d).  This request is denied herein.

other factors considered by the ICC, plaintiff's mental health was reviewed and records indicate that a clinician, Dr. Wilson, was present during the ICC.  Dr. Wilson noted that plaintiff was a participant in the EOP level of care, that his ADL were adequate, his interactions with staff appeared to be appropriate and plaintiff's placement in alternative levels of mental health care were not recommended.[22]  (ECF No. 62-1 at 3.)

Undisputed Fact No. 15:  A fourth ICC was held at Corcoran on August 8, 2017.  Among other factors considered by the ICC, plaintiff's mental health was reviewed and records indicate that a clinician, Dr. Nguyen, was present during the ICC.  As with the ICC held on May 8, 2017, Dr. Nguyen noted that plaintiff was a participant in the EOP level of care, that his ADL were adequate, his interactions with staff appeared to be appropriate, and plaintiff's placement in alternative levels of mental health care was not recommended.[23]  (ECF No. 62-1 at 3.)

Undisputed Fact No. 16: Each ICC at Corcoran reviewed and considered plaintiff's mental health history prior to deciding to retain him on double-cell status.  (ECF No. 62-1 at 4; ECF No. 65 at 8.)

C.   Discussion

Defendants argue that they did not act with deliberate indifference to plaintiff's mental health because the record shows that plaintiff's mental health was properly reviewed and considered by each ICC at Corcoran.  In support of this argument defendants cite California Code of Regulations title 15, § 3269(f), which provides,

> In cases where single cells status is recommended by clinical staff
> due to mental health or medical concerns, a classification committee

---

[22] Plaintiff denies undisputed fact no. 14 on the grounds that he does not have his mental health records to examine.  (ECF No. 65 at 8.)

[23] Plaintiff denies undisputed fact no. 15 on the grounds that he does not have his mental health records to examine.  (ECF No. 65 at 8.)

1
2
3
4
5

shall make the final determination of an inmate's cell assignment. The classification committee shall consider the clinical recommendations made by the evaluating clinician with assistance from the clinician who participates in the committee and review the inmate's case factors when determining the housing assignment. Single cell status based upon clinical recommendation is usually a temporary short-term measure and must be periodically reviewed, minimally at an inmate's annual review or more frequently at the inmate's/clinician's request.

6   Cal. Code Regs. tit. 15, § 3269(f).

7   Defendants' evidence demonstrates that at the time plaintiff was housed at Corcoran, he

8   was a participant in the EOP level of care. (ECF No. 62-2 at 2.) EOP placement does not

9   qualify an inmate for single-cell status. (Id.)

10   As discussed above, defendants reviewed the February 22, 2017, ICC report when

11   reviewing plaintiff's grievance. Defendants contend that the February 22, 2017, ICC reviewed

12   plaintiff's mental health. The February 22, 2017, ICC report states that plaintiff was a participant

13   in the MHSDS at the EOP level of care. (ECF No. 62-2 at 17.) The report states that plaintiff's

14   interaction with staff appeared appropriate. (Id.) The report states that plaintiff's placement in

15   alternative levels of care in the Mental Health Services Delivery System were considered and

16   were not recommended. (Id.) The report states that per plaintiff's assigned clinician, plaintiff's

17   mental health was unlikely to decompensate while retained in ad seg. (ECF No. 62-2 at 17.) The

18   report also states that Dr. Gonzales was a member of the ICC. (Id.) The undersigned observes

19   that the February 22, 2017, ICC does not state that a mental health clinician recommended that

20   plaintiff be granted single-cell status.

21   In his opposition, plaintiff argues that the ICC is required to give greater consideration to

22   the mental health of an inmate in the EOP program when considering housing status. (ECF No.

23   65 at 3.) Plaintiff contends that mental health incorrectly failed to make the recommendation for

24   single-cell status. (Id.) Plaintiff argues that Dr. Gonzales did not take plaintiff's EOP status into

25   full consideration. (Id.)

26   Plaintiff provides no evidence that the ICC is required to give greater consideration to the

27   mental health of inmates in the EOP program. The undersigned also finds that the failure of

28   mental health staff to recommend plaintiff for single-cell status cannot be attributed to

1    56(d).

2         While plaintiff claims that defendants did not produce his mental health records, plaintiff

3    does not allege that he requested these records from defendants.  Plaintiff did not file a motion to

4    compel regarding defendants' alleged failure to produce these records.  Because the record

5    indicates that plaintiff did not previously pursue a request for his mental health records, plaintiff's

6    motion to defer defendants' summary judgment on these grounds should be denied.  Big Lagoon

7    Rancheria v. California, 789 F.3d 947, 955 (9th Cir. 2015) (en banc) (citation omitted) (a Rule

8    56(d) motion may be denied if plaintiff did not "diligently pursue[]" their previous discovery

9    opportunities).

10        Accordingly, IT IS HEREBY RECOMMENDED that defendants' summary judgment

11   motion and supplemental summary judgment motion (ECF Nos. 50, 62) be granted.

12        These findings and recommendations are submitted to the United States District Judge

13   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14   after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

17   objections shall be filed and served within fourteen days after service of the objections.  The

18   parties are advised that failure to file objections within the specified time may waive the right to

19   appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

20   Dated:  March 7, 2022

21

22                                          KENDALL J. NEWMAN
                                           UNITED STATES MAGISTRATE JUDGE
23   Fields653.sj(4)

24

25

26

27

28

                                    30